UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Derivatively on Behalf of MBIA INC., <br><br> Plaintiffs, <br><br> -against- <br><br> DAVID C. CLAPP, GARY C. DUNTON, CLAIRE L. GAUDIANI, DANIEL P. KEARNEY, LAURENCE MEYER, DAVID M. MOFFETT, DEBRA J. PERRY, JOHN A. ROLLS, RICHARD C. VAUGHAN, RICHARD H. WALKER, JEFFREY W. YABUKI, <br><br> Defendants, <br><br> -and- <br><br> MBIA INC., <br><br> Nominal Defendant. | No. 08-CV-01515 (KMK) (GAY) |

**NOMINAL DEFENDANT MBIA INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

MBIA ...................................................................................................................................... 2

Derivative Complaint ............................................................................................................. 3

Special Litigation Committee ................................................................................................ 4

        1.     David A. Coulter ................................................................................... 5

        2.     Richard C. Vaughan ............................................................................ 6

        3.     Kewsong Lee ........................................................................................ 6

        4.     Advisors ................................................................................................ 7

SLC Inquiry ............................................................................................................................ 7

Findings of the SLC ............................................................................................................... 8

ARGUMENT .......................................................................................................................... 9

I.    The Derivative Claims Against MBIA Officers and Directors Belong to MBIA ................. 9

II.   Connecticut Law and the Provisions of the Model Business Corporation Act Adopted by Connecticut, Govern the Rights of MBIA and Its Shareholders .......................................... 10

III.  The Complaint Should Be Dismissed for Failure To Plead with Particularity ................... 11

IV.  The Judicial Review of the SLC's Determination Is Limited to the Process it Employed During the Inquiry ............................................................................................................... 14

       A.    Procedural Focus ..................................................................................... 14

       B.    MBIA's SLC Members Are Qualified Directors ................................... 16

            1. No Material Interest ........................................................................... 17

            2. No Material Relationships ................................................................ 18

            3. Totality of Circumstances ................................................................. 19

            4. Independent Advisors ........................................................................ 19

       C.    The SLC's Determination Was Made in Good Faith After Conducting a Reasonable Inquiry ................................................................................... 19

       D.    Plaintiff Has the Burden of Proof ........................................................... 21

V.   Plaintiff's Failure To Allege Particularized Facts Bars Discovery ...................................... 23

CONCLUSION ..................................................................................................................... 25

DOCSNY-341159v04

# TABLE OF AUTHORITIES

Page

Cases

*Auerbach v. Bennett*, 47 N.Y.2d 619, 393 N.E.2d 994, 419 N.Y.S.2d 920 (1979) ................ passim

*Collazo v. BBDO NY*, No. 96 Civ. 9507, 1997 WL 746447 (S.D.N.Y. Dec. 3, 1997) ................... 9

*Crescente v. Brown et al.*, No. 08/17595 .................................................................................... 7

*Frank v. LoVetere*, 363 F. Supp. 2d 327 (D. Conn. 2005) ...................................................... passim

*Halebian v. Berv*, No. 06 Civ. 4099, 2007 WL 2191819 (S.D.N.Y. July 31, 2007) .............. passim

*Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) (Karas, J.) ................................ 10, 25

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ................................................................ 9

*Lewis v. Graves*, 701 F.2d 245 (2d Cir. 1983) ............................................................................ 18

*Lichtenberg v. Zinn*, 260 A.D.2d 741, 687 N.Y.S.2d 817 (3d Dep't 1999) ...................... 16, 17, 19

*Marx v. Akers*, 666 N.E.2d 1034 (N.Y. 1996) ....................................................................... 12, 25

*Melton v. Blau*, No. X04CV030103953S, 2004 WL 2095317 (Conn. Super. Aug. 26, 2004) ........................................................................................................................................ 16

*Renner v. Chase Manhattan Bank, N.A.*, 85 F. App'x. 782 (2d Cir. 2004) ................................. 12

*St. Clair Shores Gen. Employees Ret. Sys.*, No. 06 Civ. 688, 2008 WL 2941174, at *5 (S.D.N.Y. July 30, 2008) ............................................................................................. 10, 19, 20

*Stoner v. Walsh*, 772 F. Supp. 790 (S.D.N.Y. 1991) .................................................................. 10

*Strougo v. Bassini*, 112 F. Supp. 2d 355 (S.D.N.Y. 2000) ......................................................... 17

*Strougo v. Padegs*, 27 F. Supp. 2d 442 (S.D.N.Y. 1998) ...................................................... 18, 19

*Strougo v. Padegs*, 986 F. Supp. 812 (S.D.N.Y. 1997) .............................................................. 12

*Wilson v. Tully*, 243 A.D.2d 229, 676 N.Y.S.2d 531 (1st Dep't 1998) ...................................... 14

*Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981) ............................................................ 15

Statutes

Conn. Gen. Stat. § 33-605 .............................................................................................. 16, 17, 18

Conn. Gen. Stat. § 33-647(1) ..................................................................................................... 9

Conn. Gen. Stat. § 33-722 ............................................................................................. 9, 12, 13

Conn. Gen. Stat. § 33-723 ........................................................................................................ 12

Conn. Gen. Stat. § 33-724 ............................................................................................ 11, 14, 22

Rules

FRCP 12(b)(6) ..................................................................................................................... 1, 11

FRCP 23.1 ............................................................................................................................... 12

## PRELIMINARY STATEMENT

Nominal defendant MBIA Inc. ("MBIA"), through the special litigation committee ("SLC") of the MBIA board of directors, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the derivative complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). This action must be dismissed for two reasons. First, the complaint fails to plead, with requisite particularity, a lack of independence or that the SLC acted in bad faith, or conducted an inadequate inquiry. Second, the independent members of the SLC have determined, in the exercise of their business judgment, that pursuit of this action is not in the best interests of MBIA and its shareholders. To be sure, the governing statute expressly authorizes the SLC to move for a dismissal of this derivative action, and mandates dismissal if the SLC's decision was (1) reached by independent directors, (2) based on a reasonable inquiry, and (3) made in good faith.

The allegations in the derivative complaint principally relate to MBIA's exposure to collateralized debt obligations ("CDOs"), a subset of CDOs referred to as $CDO^2$s, and MBIA's related disclosures of that exposure for the period of February 9, 2006 to the present. *See, e.g.*, Trustees of the Police & Fire Retirement Sys. of the City of Detroit v. Clapp et al., No. 08-01515 *passim* (Feb. 13, 2008) [hereinafter Derivative Complaint] (Final Report of the Special Litigation Committee of the Board of Directors of MBIA Inc. ("Report"), Ex. 1). The complaint claims that MBIA concealed these $CDO^2$ transactions from the market and only fully disclosed its exposure on January 9, 2008. *See, e.g., id.* ¶¶ 12, 79. Additionally, the complaint asserts that the defendants breached their fiduciary duties by: (1) improperly managing MBIA's business and assets, (2) misrepresenting MBIA's financial results, (3) exposing the Company to liability for violations of federal law, and (4) causing the Company to be a target of regulatory investigations. *Id.* ¶ 20.

The independent members of the SLC conducted a thorough and good faith inquiry over the course of eight months, which included thirty-two witness interviews (many on several occasions) and the review of over 26,000 pages of paper documents and over 24,000 electronic documents (after term searches were applied to databases containing more than 445,000 documents). Following this inquiry, the SLC concluded, in the exercise of its independent business judgment, for the reasons set out below and in the accompanying 165-page Report, that the pursuit of the litigation is not in the best interests of MBIA and its shareholders.

Therefore, the SLC respectfully requests that the Court dismiss the complaint with prejudice.

## STATEMENT OF FACTS

### MBIA

MBIA, incorporated under the laws of the State of Connecticut in 1986, provides financial guarantee insurance, investment management services, and other services to public finance and structured finance clients internationally. Generally, financial guarantee insurance provides a guarantee of the payment of the principal, interest, and other amounts owed on insured obligations when due. In some circumstances financial guarantee insurance provides for payments after a referenced deductible has been exhausted. MBIA conducts its financial guarantee business through its wholly owned subsidiary, MBIA Insurance Corp. MBIA Insurance Corp. is the successor to the business of the Municipal Bond Insurance Association, which began writing financial guarantees for municipal bonds in 1974.

MBIA issues financial guarantees on a variety of products. It divides these products into two general categories—municipal finance and structured finance. The municipal finance products guaranteed by MBIA include bonds and notes issued by cities, counties, states, political subdivisions, utility districts, airports, health care institutions, housing authorities, and similar

agencies. The structured finance products that MBIA guarantees consists of obligations collateralized by diverse pools of assets, including pools of corporate loans and pools of mortgages, such as residential mortgage-backed securities ("RMBS") and CDOs, which can be backed by a variety of assets, including RMBS, commercial mortgage-backed securities, corporate loans, and consumer loans.

**Derivative Complaint**

On or about February 13, 2008, the Trustees of the Police and Fire Retirement System of the City of Detroit filed the complaint naming the following individuals as defendants: David C. Clapp, Gary C. Dunton, Claire L. Gaudiani, Daniel P. Kearney, Laurence Meyer, David M. Moffett, Debra J. Perry, John A. Rolls, Richard C. Vaughan, Richard H. Walker, and Jeffrey W. Yabuki.

The allegations in the complaint principally relate to MBIA's exposure to CDOs, a subset of CDOs referred to as $CDO^2$s, and the Company's related disclosures of that exposure for the period of February 9, 2006 to the present. *See, e.g., id.* ¶¶ 9, 10, 11, 20, 72-87, 114, 118, 129, 130, 131. The complaint claims that MBIA concealed these $CDO^2$ transactions from the market and only fully disclosed its exposure on January 9, 2008. *See, e.g., id.* ¶¶ 12, 79. The complaint further asserts that MBIA "disclosed for the first time that it faced significant exposure" to $CDO^2$s in a December 19, 2007 press release, *id.* ¶ 9, although the complaint claims that this information was inaccurate. *Id.* ¶ 11. The complaint acknowledges, however, that MBIA's $CDO^2$ exposure was disclosed earlier during an investor call in August 2007. *Id.* ¶ 69. Nevertheless, the complaint generally claims that MBIA concealed these $CDO^2$ transactions from the market and improperly disclosed the extent of this exposure. *See, e.g., id.* ¶ 20.

Furthermore, the complaint alleges that defendants breached their fiduciary duty by failing to oversee MBIA's exposure to $CDO^2$s. According to the complaint, the risks associated

3

with CDO²s were ignored and loss reserves relating to these transactions were inadequate as a result of this failure of oversight. *Id.* ¶¶ 114, 116, 118. The complaint also references wrongdoing with respect to MBIA's application of mark-to-market ("MTM") accounting. *Id.* ¶¶ 72, at 32-33, 131. The complaint also asserts that the defendants are liable to MBIA for causing the Company to come under scrutiny of regulators, including the Massachusetts Secretary of State and the U.S. Securities and Exchange Commission. *Id.* ¶ 20.

More generally, the complaint asserts that the defendants breached their fiduciary duties by: (1) "abdicating their responsibilities . . . to prudently manage the assets and business of MBIA"; (2) failing to implement policies and procedures to "ensure compliance with . . . laws requiring the dissemination of accurate financial statements"; (3) "misrepresent[ing] the Company's business prospects and financial results" by concealing the Company's exposure to CDO²s and by deceiving the public regarding "their management of the Company's operations, financial health and stability, as well as its future business prospects"; (4) exposing the Company to liability for violations of federal law; and (5) "causing the Company to be a target of regulatory investigations." *Id.*

**Special Litigation Committee**

The SLC was constituted on February 25, 2008, less than two weeks after the complaint was filed. MBIA Inc. Board Resolutions Appointing a Special Litigation Committee (Feb. 25, 2008) (Report, Ex. 2). It was given the full power and authority to investigate, analyze, and evaluate the allegations raised in the complaint and to determine whether pursuit of the action was in MBIA's best interests. All of MBIA's directors voted in favor of the resolution. The determinations of the SLC are not subject to the review of the full board. Report at 10-11. The original members of the SLC are discussed below.

1.   David A. Coulter

MBIA announced Mr. Coulter's appointment to the board of directors on January 30, 2008. He sits on the compensation and organization, credit risk, and executive committees. Since 2005 he has been a managing director and senior adviser at Warburg Pincus, a well-known private equity firm with offices in the United States, Europe, and Asia. Mr. Coulter serves on the MBIA board as a representative of Warburg Pincus, which invested a total of $800 million in MBIA in January and February of 2008. As of December 31, 2008, Warburg Pincus held 17.3% of the outstanding shares of MBIA (25.3% if warrants were exercised). Mr. Coulter was a senior member of JPMorgan Chase's office of the chairman between 2000 and 2005. He has also been a senior executive at The Beacon Group and served as chairman and CEO of BankAmerica Corporation from 1995 to 1998. *Id.* at 11, 153.

In addition to its ownership interest in MBIA, Warburg Pincus has an ownership interest in Arch Capital Group Ltd. ("Arch"). Report at 11. Arch is an excess directors' and officers' ("D&O") liability insurer for MBIA, and MBIA is seeking coverage under its D&O liability insurance for expenses related to this action. Additionally, as part of its regular course of business, Arch purchases municipal bonds enhanced by insurance provided by financial guarantors, including MBIA. As of September 30, 2008, Arch held $174.6 million of municipal bonds insured by MBIA. *Id.* Additionally, Mr. Coulter personally owns a small amount of Arch stock.

As of January 30, 2008, the date Mr. Coulter was appointed to the board of directors, MBIA had ceased issuing financial guarantees on structured finance products, including RMBS, CDOs, and $CDO^2$s. Mr. Coulter's appointment to the board also came after the disclosures that are the subject of the complaint. Other than in connection with his service as a board member, Mr. Coulter has no other business, personal, or family ties to MBIA, its officers, directors, or employees. *Id.* at 12.

5

2.      Richard C. Vaughan

Mr. Vaughan became an MBIA board member in August of 2007 after being contacted by a search firm. He chairs the audit committee and serves on the executive, and compensation and organization committees of the MBIA board. From 1995 until 2005 he was the executive vice president and CFO of Lincoln Financial Group, a New York Stock Exchange-listed financial services company that offers insurance and investment management services. Before joining Lincoln Financial Group, he was vice president in charge of public offerings and insurance accounting at EQUICOR from September 1988 to July 1990. Mr. Vaughan was also a partner at KPMG Peat Marwick in St. Louis from July 1980 to September 1988. *Id.* at 12, 153.

Mr. Vaughan joined the board in August 2007, the very month that MBIA issued its last financial guarantee on a $CDO^2$. Mr. Vaughan was not directly involved in preparing any of the disclosures that are the subject of the complaint. Other than in connection with his service as a board member, Mr. Vaughan has no other business, personal, or family ties to MBIA, its officers, directors, or employees. *Id.* at 12.

3.      Kewsong Lee

MBIA announced Mr. Lee's appointment to the board of directors on January 30, 2008. While Mr. Lee was originally elected to serve on the SLC, in June of 2008 the SLC determined that Mr. Lee's position as lead director of Arch, an excess D&O liability insurance carrier for MBIA, could create the appearance that Mr. Lee was not an independent director. MBIA is seeking coverage from its D&O liability insurance policy for expenses related to the complaint, and the determinations of the SLC may involve insurance coverage issues. Although the SLC determined that Mr. Lee remained qualified to serve on the Committee, to avoid the appearance of any conflict, Mr. Lee withdrew from the SLC and did not participate in the determination as to whether pursuit of the shareholder's derivative claims was in the best

interests of MBIA. *Id.* at 13. (*See* additional discussion of Warburg Pincus's relationship with Arch, *supra* p. 5.)

4.  Advisors

The SLC retained independent counsel, Dickstein Shapiro LLP; the accounting firm Marcum & Kliegman LLP; the financial consulting firm Bates White, LLC; and finance expert Linda Allen, Ph.D to assist in the inquiry.

**SLC Inquiry**

The SLC held nineteen meetings in response to the complaint, and a separate demand letter and complaint filed on behalf of another shareholder.[1] At the outset of the inquiry, SLC counsel and the Committee discussed and developed a plan of investigation, including areas of inquiry, witnesses to interview, and documents to review. During the SLC meetings, SLC counsel updated the SLC on the status of the inquiry and discussed important documents and witness interviews. Furthermore, the SLC members directed SLC counsel to pursue certain lines of inquiry and witness interviews. The SLC was given several comprehensive presentations regarding the factual results of the inquiry and the legal framework with which to review those results. The structured finance and accounting experts also presented the results of their analysis. *Id.* at 17-18, 158-59.

During the eight-month inquiry, SLC counsel, on behalf of the SLC, interviewed thirty-two witnesses. A number of the witnesses were interviewed several times. Furthermore, SLC counsel reviewed over 26,300 pages of hard copy documents and over 24,100 electronic documents. The electronic document review was based on key term searches in databases with over 445,000 documents. (Each electronic document could contain any number of pages). The

---

[1] A substantially similar shareholder derivative complaint was filed in the Supreme Court of the State of New York, Westchester County, that bears the caption *Crescente v. Brown et al.*, No. 08/17595.

documents reviewed included e-mails, materials posted on MBIA's website, MBIA internal and external presentations, MBIA public filings, and MBIA board and board committee minutes. Interview memoranda and key documents were provided to the SLC for its review. *Id.* at 2, 20, 158.

**Findings of the SLC**

The SLC concluded that none of the defendants breached their fiduciary duties of care, loyalty, or good faith. The SLC further found that none of the defendants were derelict in their respective responsibilities of oversight. The SLC also found that none of the defendants personally profited from the transactions complained of in a direct material way. In sum, the SLC found no basis for liability against the named defendants based on the allegations in the complaint, and that pursuit of the claims asserted in the complaint is not in the best interests of MBIA and its shareholders. *Id.* at 2-3, 160. The SLC also concluded that the majority of the board at the time the SLC was created and at the time the SLC was formed were independent and engaged.

The SLC has further found that if the action were allowed to proceed: (1) the time and effort of senior management would be diverted from conducting the affairs of MBIA and wasted on lengthy pretrial proceedings and a trial; (2) litigation costs would be inordinately high given that MBIA may have to pay the fees of not only counsel for the SLC to pursue the litigation but also defense counsel pursuant to advancement obligations in the Company by-laws; (3) even if such action were successful, any recovery by MBIA against a director likely would be limited to the compensation received by that director during the year of the violation pursuant to MBIA's Certificate of Incorporation; (4) in the event that MBIA prevailed on a claim, insurance coverage may not be available to fund the recovery (as well as the litigation costs) pursuant to a commonly found exclusion in the governing policy that prohibits a recovery in an action by one insured

(MBIA) against another insured (directors and officers); and (5) the continuing negative publicity would damage MBIA's business reputation and shareholder value. *Id.* at 160-61.

## ARGUMENT

I. **The Derivative Claims Against MBIA Officers and Directors Belong to MBIA.**

This is a shareholder derivative action brought by a purported shareholder of nominal defendant MBIA. Unlike an action typically brought by a plaintiff to enforce a claim he personally possesses, a shareholder derivative claim is brought "'to enforce a *corporate* cause of action.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (citation omitted). The decision to bring a corporate cause of action is ordinarily left to the corporation's board of directors or agents. *See, e.g.*, Conn. Gen. Stat. § 33-647(1). The unique nature of derivative claims is illustrated by the fact that any ultimate recovery goes to the corporation, not to the individual shareholder who brings the action as a derivative plaintiff. *See Collazo v. BBDO NY*, No. 96 Civ. 9507, 1997 WL 746447, at *4 (S.D.N.Y. Dec. 3, 1997).

Because of the nature of derivative claims, states have adopted a variety of unique procedures to ensure that the pursuit of such litigation is in the best interests of the corporation, including: (1) that a shareholder must make a written demand on the board of directors to take suitable action before filing suit; and (2) that a board is authorized to establish a committee of independent directors empowered to determine on behalf of the corporation whether pursuit of the litigation is in the best interests of the corporation. *See, e.g.,* Conn. Gen. Stat. § 33-722; *Frank v. LoVetere*, 363 F. Supp. 2d 327, 333-34 (D. Conn. 2005) (discussing the role of a Connecticut corporation's special litigation committee); Model Bus. Corp. Act § 7.44 cmt. at 7-329 to -334 (2008) [hereinafter MBCA] (discussing the role of a special litigation committee).

These requirements reflect the basic principle of corporate governance that boards of directors, rather than individual shareholders, should set the corporation's business policy,