including whether to pursue litigation. *Auerbach v. Bennett*, 47 N.Y.2d 619, 631, 393 N.E.2d 994, 1000, 419 N.Y.S.2d 920 (1979). These unique procedures also reflect the common presumption that directors act in good faith and in the best interests of the corporation. *Stoner v. Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y. 1991).

II. **Connecticut Law and the Provisions of the Model Business Corporation Act Adopted by Connecticut, Govern the Rights of MBIA and Its Shareholders.**

MBIA is incorporated in Connecticut and, accordingly, Connecticut law controls this derivative action. *See St. Clair Shores Gen. Employees Ret. Sys.*, No. 06 Civ. 688, 2008 WL 2941174, at *5 (S.D.N.Y. July 30, 2008) ("A special litigation committee has the power to terminate a derivative action to the extent allowed by the state of incorporation."); *see also Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 407 n.6 (S.D.N.Y. 2007) (Karas, J.) ("Under New York law, courts look to the law of the state of incorporation to adjudicat[e] a corporation's internal affairs, including questions as to the relationship between the corporation's shareholders and its directors, such as a shareholder derivative action." (alteration in original) (internal quotation marks and citations omitted)).

In 1997 Connecticut adopted several provisions of the Model Business Corporation Act ("MBCA"), including those related to shareholder derivative actions. *Frank*, 363 F. Supp. 2d at 333 n.2. The legislative history evidences that Connecticut adopted the MBCA, in part, so that its courts could look to the MBCA's Official Comment as well as case law from other MBCA states for guidance. Connecticut Judiciary Committee, Report on Bills Favorably Reported by the Committee (2006); Connecticut General Assembly H-977, at 004500-01 (2006) (statement of Rep. Spallone); *S.B. 547 An Act Concerning the Duties and Responsibilities of Directors and Officers of Business Corporations and Nonstock Corporations Before the Judiciary Comm.* 2048 (2006) (statement of Thomas Klee, Chairman, Business Law Section of the Connecticut Bar Association); *H.B. 5712 Before the Judiciary Comm.* 001801 (1994)

10

(statement of James Lotstein, Co-Chairman, Connecticut Bar Association Model Act Business Task Force).

Connecticut statutorily provides that "[a] derivative proceeding *shall* be dismissed" where, as here, a qualified SLC has determined, after a good faith and reasonable inquiry, that the derivative action is not in the best interests of the corporation:

> (a) A derivative proceeding *shall* be dismissed by the court on motion by the corporation if one of the groups specified in subsection (b) . . . of this section has determined in *good faith* after conducting a *reasonable inquiry* upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation.
>
> (b) . . . the determination in subsection (a) of this section shall be made by:
>
> (2) a majority vote of a committee consisting of two or more qualified directors appointed by a majority vote of *qualified directors* present at a meeting of the board of directors, regardless of whether such qualified directors constitute a quorum.

Conn. Gen. Stat. § 33-724 (emphasis added); *see also Frank*, 363 F. Supp. 2d at 333 (dismissing a shareholder derivative complaint based on special litigation committee's determination). The statute is a codification of the business judgment rule as it pertains to shareholder derivative cases.

### III.  The Complaint Should Be Dismissed for Failure To Plead with Particularity.

The plaintiff has not pled and cannot plead, with the requisite particularity, a lack of independence, or that the SLC acted in bad faith or conducted an inadequate inquiry. Therefore the complaint must be dismissed under Connecticut General Statutes section 33-724(c). *Frank*, 363 F. Supp. 2d at 333; *see Halebian v. Berv*, No. 06 Civ. 4099, 2007 WL 2191819 (S.D.N.Y. July 31, 2007) (granting Rule 12(b)(6) motion to dismiss derivative claims pursuant to the MBCA provision at issue in this case).

11

Under the statutory scheme imposed by Connecticut law, a demand is an absolute prerequisite to the maintenance of a derivative action.[2] Conn. Gen. Stat. § 33-722 (universal demand statute); MBCA § 7.44 cmt. at 7-332. If a plaintiff elects to proceed with the derivative action after the board, or a committee of the board, has refused to bring the demanded litigation, then the plaintiff may commence an action.[3] But the complaint must state, with particularity either (1) "that a majority of the board of directors did not consist of qualified directors at the time the determination was made," or (2) that the SLC failed to make its determination "in good faith, after conducting a reasonable inquiry upon which its conclusions are based." Conn. Stat. Gen. § 33-724(a), (c). The particularity requirement is analogous to the heightened pleading mandated under the FRCP when a party alleges fraud. *Frank*, 363 F. Supp. 2d at 333; *see also Renner v. Chase Manhattan Bank, N.A.*, 85 F. App'x. 782, 784 (2d Cir. 2004) (stating that plaintiff must satisfy his burden by alleging facts "that give rise to a strong inference" of the required intent); *Halebian*, 2007 WL 2191819, at *8. Similarly, FRCP 23.1 requires that the complaint also plead, with particularity, "(A) any effort by the plaintiff to obtain the desired action from the directors . . . ; and (B) the reasons for not obtaining the action or not making the effort." FRCP 23.1(b).

---

[2] The statute is expressly designed to eliminate motion practice, prevalent under Delaware law, over the issue of whether demand is futile or required. MBCA § 7.42 cmt. at 7-317. Although the statute's goal is to eliminate the demand futility battle, it does recognize that in extreme circumstances—which are not present here—demand may be excused. Conn. Gen. Stat. § 33-722 (excusing demand where the corporation would suffer "irreparable injury"); *Marx v. Akers*, 666 N.E.2d 1034, 1038 (N.Y. 1996) (recognizing that Connecticut is a universal demand state).

[3] While the governing statute provides that the plaintiff must wait ninety days before commencing suit, it also contemplates that the investigation may last longer than ninety days. Conn. Gen. Stat. § 33-723 ("If the corporation commences an inquiry into the allegations made in the demand or complaint, the court may stay any derivative proceeding for such period as the court deems appropriate."); *Strougo v. Padegs*, 986 F. Supp. 812, 815 (S.D.N.Y. 1997) (staying action to allow special litigation committee to complete its investigation).

A plaintiff-shareholder cannot escape this heightened pleading standard, where as here, he fails to comply with Connecticut law by filing a derivative complaint instead of first issuing a demand. *Halebian*, 2007 WL 2191819, at *8 (applying Massachusetts law, based on the MBCA).

Here, plaintiff filed the complaint without first making a demand, contrary to the requirements of Connecticut General Statutes section 33-722. Plaintiff has failed to set forth the imminent irreparable injury that justified the failure to make the required demand.[4] SLC counsel asked that plaintiff withdraw the complaint but plaintiff refused. Letter from Donald A. Corbett to David L. Wales, Mar. 7, 2008 (Declaration of Daniel K. Roque in Support of Motion To Dismiss [hereinafter Roque Decl.], Ex. A). Instead, plaintiff agreed to several extensions of time for defendants to respond to the complaint while the SLC completed its inquiry. As the court did in *Halebian*, this Court should reject any attempt by plaintiff to argue that the statute and its pleading requirements are inapplicable because the action was commenced *before* the demand had been rejected. 2007 WL 2191819, at *7 n.8.

The complaint certainly does not plead any particularized facts showing that the two outside directors on the SLC were not independent, or that the SLC acted in bad faith or did not conduct a reasonable inquiry. Plaintiff does not even identify Mr. Coulter as a board member, let alone set out particularized facts calling into question his independence.

The complaint fails to plead with any particularity why the board was not qualified to respond to the demand. The complaint does no more than identify the board committees that the directors serve on and then sets out, in conclusory and boilerplate fashion, allegations about improper statements. Derivative Complaint ¶¶ 119-36 (Report, Ex. 1). With the exception of

---

[4] Plaintiff merely recites boilerplate allegations concerning the futility of making a demand. Derivative Complaint ¶¶ 113-36 (Report, Ex. 1). As set out above, demand is an absolute prerequisite under Connecticut law. *See supra* p. 12.

13

Mr. Dunton, the complaint is devoid of any particularized facts regarding an individual director's role, if any, regarding any specific statement. In fact, the complaint does not ascribe any particular statement to any individual defendant other than Mr. Dunton.

### IV.  The Judicial Review of the SLC's Determination Is Limited to the Process it Employed During the Inquiry.

Even if the Court were to look beyond plaintiff's pleading deficiencies, the accompanying 165-page Report, with 231 exhibits, demonstrates unequivocally that the SLC is independent, that it conducted its inquiry in good faith, and that it conducted a reasonable inquiry. Conn. Gen. Stat. § 33-724(a). Plaintiff cannot satisfy its burden of showing that the SLC was not independent, acted in bad faith, and conducted an inadequate inquiry.

#### A.  Procedural Focus

The focus of the Court's review of the SLC's decision to terminate this shareholder derivative action is properly on the procedural aspects of the SLC's inquiry—independence, good faith, and reasonableness of the inquiry—as opposed to its conclusions and the merits of its decision. The emphasis on process reflects the proper application of the business judgment rule in the context of shareholder derivative actions. As one of the few federal courts to have interpreted the MBCA on this issue stated: "The policy reasons for this limited review is that a corporation should be free to determine in its own business judgment whether litigation is in its best interest, free from unnecessary interference." *Frank*, 363 F. Supp. 2d at 335; *see also Auerbach*, 47 N.Y.2d at 633 ("The . . . substantive decision falls squarely within the embrace of the business judgment doctrine, involving as it did the weighing and balancing of legal, ethical, commercial, promotional, public relations, fiscal and other factors familiar to the resolution of many if not most corporate problems. To this extent the conclusion reached by the special litigation committee is outside the scope of our review."); *Wilson v. Tully*, 243 A.D.2d 229, 232, 676 N.Y.S.2d 531 (1st Dep't 1998) (recognizing "the inherent powers of the board to manage the

affairs of the corporation, which includes making decisions about whether or not to pursue . . . litigation").

The MBCA's Official Comment specifically states that the judicial review under Connecticut law is similar to the review undertaken by the New York courts. *See Frank*, 363 F. Supp. 2d at 334-35; MBCA § 7.44 cmt. at 7-333-334 (citing *Auerbach*, 393 N.E.2d 994, 1002-03). New York's highest court has held that a reviewing court should focus on the SLC's process:

> While the court may properly inquire as to the adequacy and appropriateness of the committee's investigative procedures and methodologies, it may not under the guise of consideration of such factors trespass in the domain of business judgment. . . . The [committee] may be expected to show that the areas and subjects to be examined are reasonably complete and that there has been a good-faith pursuit of inquiry into such areas and subjects.

*Auerbach*, 47 N.Y.2d at 634. Thus New York courts are prohibited from second-guessing the committee's decision. "To permit judicial probing of such issues would be to emasculate the business judgment doctrine as applied to the actions and determinations of the special litigation committee." *Id.* at 633-34.

In contrast, Delaware law permits courts to review the merits and reasonableness of the committee's ultimate determination. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del. 1981); MBCA § 7.44 cmt. 7-333 to -334. And although the federal district court in *Frank* noted that the governing Connecticut statute does not entirely follow New York law in that it "'authorizes the court to examine the [SLC's] determination to ensure that it has *some support* in the findings of the inquiry,'" the court also made clear that following a Delaware-type approach would be "incompatible" with Connecticut law. *Frank*, 363 F. Supp. 2d at 334, 335 (quoting MBCA § 7.44 cmt. (1999)).

Rather than authorizing the court to conduct a Delaware-style inquiry of the SLC's decision, Connecticut law, the MBCA, and *Frank* stand for the proposition that the SLC cannot

15

prevail on a motion to dismiss if it merely sets out its findings in conclusory fashion, and instead must submit to the court "some support" for its findings. *See, e.g., id.* at 335. The MBCA Official Comment indicates that the requirement of "some support" may be satisfied by a fulsome report setting forth the committee's determination and the basis for the committee's conclusion. *See* MBCA § 7.44 cmt. at 7-332.

### B.     MBIA's SLC Members Are Qualified Directors.

Connecticut's governing statute provides for delegating the board's decision on whether to pursue the litigation to a committee of independent or "qualified" directors. Qualified directors have no "*material interest* in the outcome of the proceeding" or "*material relationship* with a person who has such an interest." Conn. Gen. Stat. § 33-605(a)(1) (emphasis added). A *material interest* is defined as "an actual or potential benefit or detriment, other than one which would devolve on the corporation or the shareholders generally, that would reasonably be expected to impair the objectivity of the director's judgment when participating in the action to be taken." *Id.* A director has a *material relationship* with an interested director if he has "a familial, financial, professional or employment relationship that would reasonably be expected to impair the objectivity of the director's judgment when participating in the action to be taken." *Id.*; *see also Melton v. Blau*, No. X04CV030103953S, 2004 WL 2095317, at *6 (Conn. Super. Aug. 26, 2004) ("[T]o be 'independent' means that one is free from the influence, control or determination of someone or something"). "[But] a casual social relationship with another director should not be regarded as a disqualifying relationship." MBCA § 1.43 cmt. at 1-126; *see also Lichtenberg v. Zinn*, 260 A.D.2d 741, 742-43, 687 N.Y.S.2d 817 (3d Dep't 1999) (finding a committee member disinterested where he had a casual social relationship with the defendant director). The accompanying Report unequivocally establishes Messrs. Coulter's and

Vaughan's independence. Plaintiff cannot satisfy its burden of showing that the members of the SLC are not qualified.

Mr. Coulter's employer's ownership interest in Arch, one of MBIA's excess D&O liability insurers and a holder of MBIA insured securities, as well as his own personal ownership of Arch stock is far too attenuated of a relationship to impact upon Mr. Coulter's ability to exercise independent judgment here.

### 1. No Material Interest

Neither Messrs. Coulter nor Vaughan possess a material interest in the outcome of the litigation that would disqualify them from service on the SLC. They are both outside directors. Mr. Coulter's interest in the litigation is uniquely aligned with shareholders in that he serves on the board as the representative of Warburg Pincus, which holds approximately 17% of the outstanding shares of MBIA. Report at 11, 153.

Mr. Coulter is not named as a defendant and he was not a member of the board of directors at the time MBIA was issuing financial guarantees on CDOs, CDO$^2$s, or RMBS, nor when the complained of public disclosures were released. Mr. Vaughan joined the board in August 2007, the very month MBIA issued its last financial guarantee on a CDO$^2$. Similarly, Mr. Vaughan joined the board after many of the complained of disclosures were released. *Id.* at 12, 152. These facts support a finding of independence. *Auerbach*, 47 N.Y.2d at 632 (finding that committee members elected to the board after the transaction under review occurred were independent); *Strougo v. Bassini*, 112 F. Supp. 2d 355, 363-64 (S.D.N.Y. 2000) (finding committee members disinterested where they joined the board after the alleged impropriety); *Lichtenberg*, 260 A.D.2d at 742 (same). Furthermore, service on a board at the time of the challenged transaction—even approval of the challenged transaction—standing alone, is not enough to disqualify a director from the special litigation committee process. Conn. Gen. Stat. §

33-605(c)(3) (expressly providing that "a director who approved the conduct being challenged" is not, by itself, a ground for disqualification).

Even though Mr. Vaughan is named as a defendant, that alone is insufficient to disqualify him from the special litigation committee process. *Id.* (expressly providing that being named as defendant is not disqualifying). A contrary rule would render the special litigation committee process meaningless. A derivative plaintiff could simply bring frivolous claims against a corporation's entire board and thereby defeat the orderly review process contemplated by the governing statute. *See Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir. 1983) ("[P]laintiffs could readily circumvent the demand requirement merely by naming as defendants all members of the derivative corporation's board. . . . This transparent litigation tactic is like sleight of hand that is *slower* than the eye.")

### 2. No Material Relationships

Neither Messrs. Coulter nor Vaughan possess a material relationship that would preclude them from exercising independent judgment. Both Messrs. Coulter and Vaughan are independent in the sense of being free of any personal, family, business, or other relationship that would interfere with their respective judgments. Report at 153. While each SLC member certainly has a professional relationship with fellow MBIA board members in that they serve together on the MBIA board, that relationship would not preclude him from deciding, on the merits alone, whether pursuit of the litigation against a fellow board member is in the best interests of MBIA and its shareholders. Conn. Gen. Stat. § 33-605(c) (1) ("Nomination or election of the director to the current board by any director who is not a qualified director with respect to the matter" is not a ground for disqualification); *Strougo v. Padegs*, 27 F. Supp. 2d 442, 449 (S.D.N.Y. 1998) (stating that the majority view "recognizes that independent directors

are capable of rendering an unbiased opinion even though they were appointed by defendant directors and share a common experience with the defendants").

Similarly, none of the SLC members has a relationship with any other defendant that would preclude them from deciding the issue on the merits, free of extraneous considerations. The members of the SLC do not serve on any other boards with any of the defendants, nor do they actively participate in any organizations with any of the defendants. Report at 154. Nor are there any other relationships that would preclude independent decision-making.

### 3. Totality of Circumstances

Courts have also looked to the totality of the circumstances to determine whether special litigation committees are qualified. *See Padegs*, 27 F. Supp. 2d at 448. "The 'totality of the circumstances' test does not 'necessitate the complete absence of any facts which might point to non-objectivity.'" *Id.* (citation omitted). "'[T]he question of independence turns on whether a director is, *for any substantial reason*, incapable of making a decision with only the best interests of the corporation in mind.'" *St. Clair*, 2008 WL 2941174, at *7 (alteration in original) (citation omitted).

### 4. Independent Advisors

The SLC was also advised by independent counsel, and independent structured finance and accounting experts. Report at 18, 159; *Lichtenberg*, 260 A.D.2d at 744 (finding that the use of experienced independent counsel and experts supported the finding of a reasonable inquiry).

### C. The SLC's Determination Was Made in Good Faith After Conducting a Reasonable Inquiry.

The elements of good faith and reasonableness overlap and are evidenced by the SLC's thorough inquiry, extensive Report, and three volumes of supporting exhibits. *See St. Clair*, 2008 WL 2941174, at *12. "[T]he touchstone of good faith in the context of a special

19

litigation committee report is its demonstrated willingness to deal openly and honestly with all relevant and material information." *Id.* (alteration in original) (citation omitted). The standard of good faith applies to both the determination and the inquiry, and "is a subjective one, meaning 'honestly or in an honest manner.'" MBCA § 7.44 cmt. at 7-331. "Proof . . . that the investigation has been so restricted in scope, so shallow in execution, or otherwise so *pro forma* or half-hearted as to constitute a pretext or sham, consistent with the principles underlying the application of the business judgment doctrine, would raise questions of good faith or conceivably fraud which would never be shielded by that doctrine." *Auerbach*, 47 N.Y.2d at 634-35.

The Connecticut statute authorizing the dismissal of this derivative action intentionally uses the term "inquiry" instead of "investigation" "to make it clear that the scope of the inquiry will depend upon the issues raised and the knowledge of the group making the determination with respect to those issues." MBCA § 7.44 cmt. at 7-331. The inquiry need not be flawless and the SLC need not have engaged in "litigation-type discovery before arriving at its conclusions." *Frank*, 363 F. Supp. 2d at 336; *Auerbach*, 47 N.Y.2d at 635-36 (finding no fault with committee basing its determination, in part, on a review of prior investigation by audit committee). Furthermore, although a reasonableness analysis is fact-sensitive, courts have approved of committee determinations based on far more cursory inquiries than the eight-month inquiry conducted here. *See Frank*, 363 F. Supp. 2d at 336 (approving the committee's inquiry despite plaintiff's claims that, among other deficiencies, the committee failed to interview important witnesses and conduct an independent financial analysis, held brief and infrequent meetings, and had its work subjected to interference by a defendant who limited committee counsel's fees).

There is no doubt that the SLC engaged in a good faith and reasonable inquiry. Recognizing the scope and complexity of the issues raised, the SLC engaged independent

structured finance experts and an independent accounting expert with significant experience in the areas in dispute. Furthermore, the inquiry consisted of a review of over 26,000 pages of paper documents and over 24,000 electronic documents (after term searches were applied to databases containing more than 445,000 documents). The inquiry also involved the interviews of all thirty-two of the relevant witnesses. Report at 18, 20, 152, 158. During the eight-month inquiry as new factual developments came to light, the SLC took advantage of the unfettered access it was given to Company employees and engaged in several unscheduled, follow-up conference call interviews. Furthermore, the SLC held nineteen meetings during which it directed the scope and direction of the inquiry, received comprehensive factual presentations on the progress of the inquiry from counsel and the experts, and ultimately determined what was in the best interests of the corporation and its shareholders. Report at 17, 158.

The accompanying 165-page Report and its 231 exhibits unequivocally establishes that the SLC conducted a good faith and reasonable inquiry. These materials present the facts in an open, honest, and balanced manner. The Report candidly reviews the facts underlying plaintiff's allegations, and even goes beyond the allegations in the complaint, identifying issues with respect to disclosures not mentioned in the complaint. *Id.* at 42-43. What's more, the Report's factual findings are supported by citations to three volumes of exhibits. In sum, the plaintiff cannot satisfy its burden of showing that the SLC conducted anything other than a good faith and reasonable inquiry.

### D. Plaintiff Has the Burden of Proof.

The governing Connecticut statute places the burden of proof with the plaintiff. The relevant statute provides that, where as here, "a majority of the board of directors consists of qualified directors at the time the determination [to terminate the action] was made, the plaintiff shall have the burden of [proof]." Conn. Gen. Stat. § 33-724(d); *see Frank*, 363 F. Supp. 2d at

333 ("[T]to successfully oppose [the SLC's] motion to dismiss [the complaint], plaintiff must show 'with particularity' facts supporting his allegation that the SLC lacked good faith, reasonableness and independence as required under Conn. Gen. Stat. § 33-724(a).").

Not only are the members of the SLC independent, but a majority of the board was independent at the time the SLC was created and at the time the SLC made its determination.[5] Report at 157-58. At the time the SLC was created, the board consisted of twelve members, eleven of whom were non-management directors: David Clapp, David Coulter, Claire Gaudiani, Daniel Kearney, Kewsong Lee, Laurence Meyer, David Moffett, Debra Perry, John Rolls, Richard Vaughan, and Jeffrey Yabuki. At the time the SLC determined that pursuit of the litigation was not in the best interests of the Company, the board consisted of eight members, seven of whom were non-management directors: Coulter, Gaudiani, Kearney, Lee, Meyer, Rolls, and Vaughan. None of the non-management directors derived a personal benefit from any of the areas under review that is not shared by every other MBIA shareholder. *Id.* at 157. Although some are named as defendants, this alone does not preclude a finding of independence. Conn. Gen. Stat. § 33-724(c). Nor does that fact that many of them were on the board when the activities in question occurred. *Id.* Finally, none of the non-management directors has a personal, financial, or other relationship that would impair their independent judgments.[6]

---

[5] As the MBCA's Official Comment recognizes, where as here, the SLC has been given the full authority to analyze and act upon a shareholder demand, the independence of the SLC should govern. MBCA § 7.44 cmt. at 7-333.

[6] The only meaningful external relationships among board members at the time the SLC was formed (February 2008) and made its determination (November 2008) were between Messrs. Yabuki and Kearney, and Messrs. Coulter and Lee. Messrs. Yabuki and Kearney both served as directors of Fiserv, Inc. Mr. Yabuki is also the president and CEO of Fiserv. Mr. Yabuki left the board in November 2008. Messrs. Coulter and Lee are both employees of Warburg Pincus and serve on the board as Warburg Pincus's representatives. As discussed earlier, Warburg Pincus has an ownership interest in Arch, one of MBIA's excess D&O liability insurers as well as a holder of MBIA insured securities. While, in the abundance of caution, Mr. Lee withdrew from the SLC as result of his role as lead director of Arch to avoid even the appearance of any conflict, the SLC in fact found Mr. Lee qualified to serve on the Committee. It is clear that these relationships could not reasonably be expected to impact upon Messrs. Coulter's and Lee's

V.  **Plaintiff's Failure To Allege Particularized Facts Bars Discovery.**

Governing Connecticut law does not permit the plaintiff to take discovery to gather the particularized facts necessary to support his opposition to the SLC's determination. *Frank*, 363 F. Supp. 2d at 333; *see* MBCA § 7.44 cmt. at 7-334. Indeed, the Connecticut federal district court has approved of this provision: "'Discovery is available to the plaintiff only after the plaintiff has successfully stated a cause of action' under the heightened pleading standard." *Frank*, 363 F. Supp. 2d at 333 (quoting MBCA § 7.44 (1999)).

A recent Southern District of New York decision adhered to this principle, denying a plaintiff-shareholder discovery and granting the company's motion to dismiss after a good faith and reasonable inquiry by independent directors. *Halebian*, 2007 WL 2191819, at *8. There, in response to a shareholder's demand letter, independent board members of a Massachusetts' company created a committee to review the demand. *Id.* at *3. Before the committee had completed its investigation, the plaintiff filed a derivative complaint. The committee ultimately determined that litigation against other directors was not in the company's best interests and that the action should be terminated pursuant to the MBCA statute adopted by Massachusetts (and virtually identical to the governing Connecticut statute). *Id.* at *8 & n.9. The company filed its motion to dismiss, supported by a report detailing the committee's inquiry and findings. *Id.* The defendant argued that he was entitled to "limited discovery" before the court considered the company's motion to dismiss, but the court rejected such an argument based on the particularity requirement of the MBCA:

> [I]t is unclear to this Court what more plaintiff would achieve from additional discovery. Defendants have submitted thousands of pages

---

ability to exercise independent judgment. The only other relationship related to director independence involved Mr. Walker, who serves as general counsel to Deutsche Bank. Deutsche Bank is a lender to MBIA and also holds debt securities issued or insured by MBIA. Moreover, the Company has provided financial guarantees on structured finance transactions, which have been originated or underwritten by Deutsche Bank. Mr. Walker resigned from the board in January 2008, before the SLC was formed.

> detailing the backgrounds of the directors at issue, as well as the extensive efforts made by the independent counsel in preparing its review of the demand for the committee and the Board. Absent a specific allegation in the complaint as to why the Board was not disinterested . . . and absent a specific argument from plaintiff as to what more discovery would yield, we decline to allow plaintiff to avail himself of a premature opening of the floodgates to discovery in an effort to cure the deficiencies of his complaint.

*Id.* at *8. Further, the court found that it was irrelevant that the complaint could not have contained particularized allegations regarding bad faith or unreasonableness since it was filed before the rejection of the demand. *See id.* n.8.

Here, the SLC has filed a 165-page Report, accompanied by three volumes of exhibits. The Report sets out in great detail the facts supporting the scope of the SLC inquiry and its findings, including its findings of independence, and provides ample evidence that its inquiry was reasonable and conducted in good faith. Plaintiff should therefore be precluded from seeking additional discovery unless it identifies, with particularity, any specific issues relating to the disinterestedness of the SLC members or the good faith and reasonable nature of the inquiry. *Halebian*, 2007 WL 2191819, at *8; *Frank*, 363 F. Supp. 2d at 333; *Auerbach,* 47 N.Y.2d at 634 ("[T]he proper reach of disclosure at the instance of the shareholders will in turn relate inversely to the showing made by the corporate representatives themselves. The latter may be expected to show that the areas and subjects to be examined are reasonably complete and that here has been a good-faith pursuit of the inquiry into such areas and subjects.").

These restrictions on discovery are in line with the unique nature and procedures governing shareholder derivative actions. These unique procedures reflect courts' general reluctance to permit derivative suits in recognition of the managerial discretion afforded boards of directors and the need to discourage "strike suits." *Marx*, 666 N.E.2d at 1037; *Kalin*, 526 F. Supp. 2d at 409-10 (Karas, J.).

24

## CONCLUSION

Therefore, for the reasons set forth above, nominal defendant MBIA through the SLC respectfully requests that the Court issue an Order dismissing the complaint with prejudice, and such other relief as the Court deems just and proper.

Dated: New York, New York         DICKSTEIN SHAPIRO LLP
      January 23, 2009

By:  s/_____
Ira Lee Sorkin (IS-8884)
Donald A. Corbett (DC-7818)
Daniel J. Horwitz (DH-9155)
Daniel K. Roque (DR-2226)
1177 Avenue of the Americas
New York, New York  10036
Phone: (212) 277-6500
Fax: (212) 277-6501
*Attorneys for Nominal Defendant MBIA Inc. through the Special Litigation Committee and Richard C. Vaughan*